Opinion
 

 NICHOLSON, J.
 

 For 30 years, the state has attempted to build a freeway through South Pasadena (the City). However, that attempt has been unavailing because the City has refused to enter into freeway agreements required by statute. (See Sts. & Hy. Code, § 100.2; hereafter undesignated code citations are to the Streets and Highways Code.) In 1982, section 100.4 was
 
 *1284
 
 enacted to allow the Department of Transportation (Caltrans) to build the freeway without the City’s consent. However, section 100.4 contained time limitations, requiring Caltrans and the California Transportation Commission (the Commission) to complete the steps leading up to and including the selection of the route for the freeway.
 

 Twelve years after enactment of section 100.4, Caltrans and the Commission had not completed the route selection process. In this declaratory and injunctive relief action, the City requested the trial court to declare that the time for selecting a route has expired. The City also asked the court to enjoin further planning, route approval, and construction of any such freeway. In response, Caltrans requested a declaration that time for selecting a route under section 100.4 has not expired.
 

 The trial court declared time has run and enjoined Caltrans from building a freeway through the City without a freeway agreement. On appeal, Cal-trans claims the appeal and cross-appeal are moot and, on the merits, argues time has not run. The City asserts the injunction was too narrow. We affirm.
 

 Facts
 

 The parties filed a joint statement of undisputed facts detailing the factual history of their dispute and the enactment of section 100.4.
 

 Since 1964, Caltrans and its predecessor have proposed to extend the Long Beach Freeway, route 710, through the City to close the last remaining gap in the Long Beach Freeway. If built as proposed, the extension would impose “some adverse impacts” on the City. Caltrans has acquired property in the City in anticipation of building the freeway.
 

 Section 100.2 requires Caltrans to obtain freeway agreements, that is, agreements with the affected cities, in every city in which a freeway will permanently close a street. Beyond section 100.2, Caltrans has also followed the practice of obtaining freeway agreements from all cities through which a proposed freeway will run, whether or not any street is permanently closed. The City has consistently refused to enter into a freeway agreement with Caltrans. In its complaint, the City alleges some of its streets would be permanently closed under currently proposed plans and, therefore, Caltrans would need a freeway agreement before it could build the freeway there.
 

 In 1982, the Legislature passed a law creating an exception to section 100.2. Signed by the Governor and chaptered on March 16, 1982, as section 100.4, this provision was designed to break the deadlock between the City
 
 *1285
 
 and Caltrans and allow the Commission to adopt a route and Caltrans to build the freeway on it without a freeway agreement with the City. (Stats. 1982, ch. 117, § 1, pp. 374-376.) However, section 100.4, contains time constraints for adopting the route without freeway agreements. (§ 100.4, subd. (i).)
 

 The limitations have to do, mostly, with preparation of environmental impact reports and statements. The reports are required by the California Environmental Quality Act (CEQA) (Pub. Resources Code, §§ 21050, 21061), while the statements are required by the National Environmental Policy Act (42 U.S.C. §§ 4321, 4332). Since the parties refer to statements and reports almost interchangeably and section 100.4 refers to them disjunctively, we refer to them collectively as reports unless clarity or the facts require otherwise.
 

 Subdivision (i) of section 100.4 states: “The department shall prepare the draft environmental impact report or statement
 
 within one year
 
 of the enactment of this section. The commission may hold public hearings on the draft environmental impact report or statement as it deems necessary, with any hearing to be concluded
 
 within six months
 
 of the availability of the draft environmental impact report or statement. The department shall prepare the final environmental impact report or statement
 
 within 12 months
 
 of the completion of the public review period of the draft environmental impact report or statement. The commission shall select the route
 
 within six months
 
 of the
 
 completion
 
 of the environmental impact report or statement.” (Italics added.) These limitations appear to comprise three years and are illustrated in appendix A.
 

 Relying on the enactment of section 100.4 on March 16, 1982, Caltrans proceeded through this process with a proposed route called the Meridian Alternative. According to the joint statement of undisputed facts, Caltrans prepared and circulated a draft environmental impact statement on March 22, 1983. On September 14, 1986, it prepared and distributed its final environmental impact report, and the Commission adopted the Meridian Alternative route on December 17, 1984. These dates and their relationship to the limitations of section 100.4, subdivision (i), are illustrated in appendix B.
 

 After the Commission selected the Meridian Alternative route, it directed Caltrans to submit the route, along with the environmental impact report, to the Federal Highway Administration (FHWA) to obtain federal funding. However, because of the route’s adverse impact on historic sites, the FHWA, in 1985, requested Caltrans to reexamine alternative routes with less impact
 
 *1286
 
 on historic sites. (See 49 U.S.C. § 303 [referred to by the parties as § 4(f), a reference to its prior enactment in the Statutes at Large] [allowing construction of transportation projects impacting on historic sites if no prudent or feasible alternative and minimization of harm].)
 

 Caltrans issued a new draft environmental impact report on December 20, 1986, more than four years after enactment of section 100.4. (Appen. C.) This report proposed the Meridian Variation route, a successor to the Meridian Alternative route not mentioned in the previous report. There is no evidence the Meridian Alternative route was ever rejected for federal funding; however, Caltrans withdrew that route and, instead, concentrated on the Meridian Variation route. In January 1992, Caltrans issued its final environmental impact report on the Meridian Variation route, and, in March 1992, the FHWA also approved the final report. However, as of the onset of this litigation in 1993, the Commission had not selected the route.
 

 The remainder of the joint statement of undisputed facts relates to the interpretation of section 100.4 by the Legislative Counsel, dated January 25, 1990, and the projected timelines for completion of the “environmental process” for the Meridian Variation route. These are not facts we find relevant to our interpretation of section 100.4 and its application in this case. Accordingly, we do not recount them.
 

 Caltrans continues to process the Meridian Variation route on the assumption section 100.4 still makes it unnecessary to obtain a freeway agreement from the City, even though the route will permanently close streets within the City. We take judicial notice that the Commission approved the Meridian Variation route on September 14, 1994, despite the need for further state action in the selection process. The City, on the other hand, claims Caltrans must obtain from it a freeway agreement as required by section 100.2 because Caltrans did not meet the time limitations prescribed in section 100.4.
 

 Procedure
 

 On April 23, 1993, the City filed a complaint seeking declaratory and injunctive relief against Caltrans. The City requested a declaration that time has run for selecting a route for the Long Beach Freeway project through the City, or, more specifically, that section 100.4 no longer exempts the Meridian Variation route from the requirement of a freeway agreement under section 100.2. It also sought an injunction against Caltrans “from further action and expenditure of public funds in pursuit of the ‘Meridian Variation’ or other route through the City . . . .”
 

 
 *1287
 
 Because the facts are undisputed, the trial court heard the case by way of cross-motions for summary judgment. Ruling as follows on October 1,1993, the trial court granted declaratory and injunctive relief:
 

 “In enacting section 100.4 . . . , the Legislature took an extraordinary step of creating special legislation to provide a quick resolution to a perceived serious problem in closure of the route 710 gap. The Legislature recognized the great problems of public policy and other laws in so doing. The Legislature (while not expressly writing a ‘sunset’ clause) in effect created a ‘sunset’ provision in the time lines specified in subsection 100.4(i). The Court finds that ‘completion’ [of the final environmental impact report] as contained in this subsection means the same as ‘prepare’ [the final environmental impact report].
 

 “With respect to [the City’s] request for injunctive relief, because section 100.2 . . . refers to ‘construction’ and not ‘approval’ or ‘route adoption,’ the Court can only enjoin actual construction. Although [the City] makes a potent argument for enjoining approval or route adoption of a freeway that cannot be constructed, the Court finds that because of the language of section 100.2, issuance of such injunction would be erroneous.”
 

 The trial court declared Caltrans could no longer use section 100.4 to avoid obtaining a freeway agreement from the City. Based on the reasoning of the declaratory judgment, it also enjoined Caltrans from building any route through the City without complying with section 100.2. Both parties appeal.
 

 Discussion
 

 I
 

 Caltrans’s Motion to Dismiss
 

 Assembly Bill No. 2556, signed into law by the Governor on September 30, 1994, will amend section 100.4 effective January 1, 1995. The amendment will eliminate the time limitations contained in section 100.4. In addition, as stated above, the Commission approved the Meridian Variation route on September 14, 1994. Caltrans claims these two developments render this appeal and cross-appeal moot. We disagree.
 

 The declaratory relief action is not moot. Until the amendment takes effect, the time limitations are in place. The City indicates it may challenge the amendment as unconstitutional. If we were to rely on the amendment as
 
 *1288
 
 if it were effective now, we would implicitly sustain its constitutionality before the City has any opportunity to challenge it. However, this is a matter that should be raised, in the first instance, in the trial court. We decline to embark on this exercise. Under the circumstances, the City is entitled to develop a record in the trial court.
 

 While we express no opinion as to the effect of the amendment, we have the authority to interpret the statute as it presently reads, no matter how certain a future change in the statute may be. Furthermore, the issues of whether a freeway can be built through the City and whether Caltrans has complied with the requirements of section 100.4 are of continuing public significance and legal importance. (See
 
 Lundquist
 
 v.
 
 Reusser
 
 (1994) 7 Cal.4th 1193, 1202, fn. 8 [31 Cal.Rptr.2d 776, 875 P.2d 1279].)
 

 Caltrans also asserts the approval of the Meridian Variation route by the Commission moots the City’s appeal concerning the breadth of the injunction. This argument also fails. As seen in our discussion below, the City sought more than just an injunction against route approval and adoption. Accordingly, Caltrans’s argument fails because it is based on a false premise.
 

 II
 

 Standard of Review After Summary Judgment
 

 The City claims we should apply an abuse of discretion standard to our review of the summary judgment. “However, an abuse of discretion standard is inappropriate; the correct standard is independent review.
 
 (Davis
 
 v.
 
 Gaschler
 
 (1992) 11 Cal.App.4th 1392, 1396[];
 
 Saldana
 
 v.
 
 Globe-Weis Systems Co.
 
 (1991) 233 Cal.App.3d 1505, 1511-1515 [].) The only exception to the independent review standard applies when we review a trial court’s exercise of discretion as allowed by Code of Civil Procedure section 437c, subdivision (e). Under all other circumstances, it is legally and procedurally incorrect to apply an abuse of discretion standard.
 
 (Schrader
 
 v.
 
 Scott
 
 (1992) 8 Cal.App.4th 1679, 1683 [].)”
 
 (Angell
 
 v.
 
 Peterson Tractor, Inc.
 
 (1994) 21 Cal.App.4th 981, 985-986 [26 Cal.Rptr.2d 541].) Thus, we review the summary judgment motions de novo, applying the same standard applied by the trial court.
 
 (Davis
 
 v.
 
 Gaschler, supra,
 
 11 Cal.App.4th at p. 1396 [14 Cal.Rptr.2d 679].)
 

 III
 

 Caltrans’s Appeal
 

 Caltrans’s appeal is based primarily on the interpretation of two words in section 100.4, subdivision (i). As noted above and illustrated in appendix A,
 
 *1289
 
 section 100.4, subdivision (i) contains specific time limits for accomplishing the tasks leading up to and including selection of the route by the Commission. It requires Caltrans to
 
 “prepare
 
 the final environmental impact report or statement within 12 months of the completion of the public review period . . . .” It then requires the Commission to “select the route within six months of the
 
 completion
 
 of the environmental impact report or statement.” (Italics added.)
 

 The parties dispute whether the environmental impact report is
 
 completed
 
 when it is
 
 prepared.
 
 If it is, as the City suggests, then the Commission met the deadline for selection of the abandoned Meridian Alternative route (selected in December 1984, three months after preparation of the report) but not for selection of the Meridian Variation route. If the report is not completed when it is prepared, as Caltrans argues, then there must be some other time when it is deemed to be completed and the six months for selection by the Commission runs from that time.
 

 “When interpreting a statute our primary task is to determine the Legislature’s intent.
 
 (Brown
 
 v.
 
 Kelly Broadcasting Co.
 
 (1989) 48 Cal.3d 711, 724 [].) In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent.
 
 (Adoption of Kelsey S.
 
 (1992) 1 Cal.4th 816, 826 [].)”
 
 (Freedom Newspapers, Inc.
 
 v.
 
 Orange County Employees Retirement System
 
 (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218].)
 

 On the face of section 100.4, subdivision (i), the preparation date is the completion date of the report. When the report is prepared, it is completed. The statute does not require that the report be “in the process of being prepared” when the deadline arrives. Instead, it says it must be “prepared” by the deadline. Furthermore, the statute requires preparation of “the
 
 final
 
 environmental impact report or statement . . . .” (Italics added.) “Final” means completed.
 

 By changing the words “report or statement” to “process” so that the last deadline reads, “The commission shall select the route within six months of the completion of the environmental impact [process],” Caltrans proposes the deadline for selection of a route has not yet been reached. While Caltrans does not express itself quite so plainly, it deliberately refers throughout its argument to completion of the environmental “process,” “assessment,” “review,” or “study.”
 

 More specifically, Caltrans describes what must be done after it has prepared a final environmental impact report. Final report in hand, Caltrans
 
 *1290
 
 must file a notice of determination with the state Office of Planning and Research, indicating whether the project will have a significant impact on the environment and whether an environmental impact report has been prepared. (Pub. Resources Code, § 21108, subd. (a).) The Office of Planning and Research makes the notice of determination available for public inspection. (Pub. Resources Code, § 21108, subd. (c).) Contrary to Caltrans’s assertion, nothing in section 21108 of the Public Resources Code states or implies an environmental impact report is not completed until after the notice of determination is filed. The filing of the notice of determination adds nothing to the report and merely recounts whether one has been prepared.
 

 An environmental impact report is the “ ‘heart of CEQA.’ ”
 
 (Laurel Heights Improvement Assn.
 
 v.
 
 Regents of University of California
 
 (1993) 6 Cal.4th 1112, 1123 [26 Cal.Rptr.2d 231, 864 P.2d 502]
 
 {Laurel Heights).)
 
 “ ‘Its purpose is to inform the public and its responsible officials of the environmental consequences of their decisions
 
 before
 
 they are made. [Citation.]’ ”
 
 {Ibid.,
 
 italics in original.) After explaining the detailed and burdensome task of preparing an environmental impact report,
 
 Laurel Heights
 
 continues: “The final substantive step in the EIR review process is certification of the final EIR. The lead agency is required to certify that the final EIR has been completed in compliance with CEQA and that it reviewed and considered the information in the final EIR prior to approving the project. [Citation.] CEQA also requires that, before approving a project, the lead agency ‘find either that the project’s significant environmental effects identified in the [final] EIR have been avoided or mitigated or that the unmitigated effects are outweighed by the projects benefits. [Citations.]’ ”
 
 {Id.
 
 at p. 1124.)
 

 Caltrans claims this quote establishes an environmental impact report is not completed until it is certified by the lead agency. However, that is not what the court said. It said the lead agency must certify the report “has been completed in compliance with CEQA . . . .”
 
 {Laurel Heights, supra,
 
 6 Cal.4th at p. 1124.) “Has been completed” denotes the report was completed
 
 before
 
 agency certification.
 

 Section 21061 of the Public Resources Code defines an “environmental impact report.” It states, in part: “An environmental impact report is an informational document which, when its preparation is required by this division, shall be considered by every public agency prior to its approval or disapproval of a project. The purpose of an environmental impact report is to provide public agencies and the public in general with detailed information
 
 *1291
 
 about the effect which a proposed project is likely to have on the environment; to list the ways in which the significant effects of such a project might be minimized; and to indicate alternatives to such a project.”
 

 Nothing in this definition even remotely suggests an “environmental impact report” is not completed until it is put to all its anticipated or possible uses following its preparation. It is untenable to argue an environmental impact report is not complete until it has been used in every way possible. Such a report is complete when it is final. Hence, when a final report has been prepared, the report has been completed.
 

 In a single declarative sentence without citation to authority or reasoning, Caltrans also states the federal environmental impact statement will not be complete until a record of decision is issued by the FHWA. This unsupported contention is waived.
 
 (Amato
 
 v.
 
 Mercury Casualty Co.
 
 (1993) 18 Cal.App.4th 1784, 1794 [23 Cal.Rptr.2d 73].)
 

 Applying the meaning apparent on the face of the statute, to which Caltrans has presented no successful rebuttal, the Commission had six months after the final environmental impact report was prepared and distributed on September 14, 1984, to select the route. It did so by selecting the Meridian Alternative route, but later abandoned that route. Now, 10 years after completion of the final environmental impact report, there is no valid basis for continued application of section 100.4 as a way to avoid obtaining a freeway agreement from the City.
 

 Finally, Caltrans claims we subvert the Legislature’s intent to allow closure of the gap in the Long Beach Freeway by construing section 100.4 as we do. Without question, the Legislature intended to allow Caltrans to avoid the need for a freeway agreement with the City. Nevertheless, the Legislature did so only on condition Caltrans act promptly and adhere strictly to a carefully crafted set of time constraints. Manifestly, the Legislature was driven by two goals: (1) building the freeway without further obstruction by the City and (2) doing so in a fraction of the time already consumed by the project (then, two decades). Caltrans frustrated legislative intent by not strictly adhering to either goal. Thus, the courts are not at fault here.
 

 The parties, especially the City, submitted virtually every conceivable form of evidence of legislative intent concerning the enactment of section 100.4 and some evidence with a connection to legislative intent which is inconceivable. The trial court excluded most of it. On appeal, the City argues some of the evidence was improperly excluded. Since we find in the City’s favor on this point without considering the excluded evidence, we need not consider the propriety of excluding it.
 

 
 *1292
 
 Caltrans correctly concedes its cross-motion for summary judgment is moot given judgment in the City’s favor on the declaratory relief cause of action.
 

 IV
 

 The City’s Appeal
 

 The City is satisfied with the trial court’s declaration that section 100.4 no longer provides Caltrans with a way to build a freeway through it without obtaining a freeway agreement, but the City charges the injunction is too narrow. It states: “CalTrans has wasted and continues to waste valuable time and resources of the community and its citizens, due to the department’s unfortunate decision to forge ahead with the route approval process in the mistaken belief that it can implement the Meridian Variation in the Route 710 corridor without obtaining South Pasadena’s consent. Effective injunctive relief is necessary to ensure fidelity to section 100.2’s requirement of freeway agreements in CalTrans’ approval and adoption decisions, and to prevent the waste of public and community resources resulting from these misguided actions.”
 

 The City argues this court should broaden the injunction in two respects. First, the court should enjoin approval and route adoption, as well as construction, of a freeway without obtaining a freeway agreement from the City. And second, the court should enforce against Caltrans its own long-standing policy of obtaining freeway agreements even when not strictly required by section 100.2, that is, when no street is permanently closed within the affected city. We consider these contentions separately.
 

 A.
 
 Injunction Against Approval and Route Adoption
 

 During the time since section 100.4’s exception to section 100.2 expired, the City claims, “CalTrans has candidly acknowledged that its attempts at securing route approval were rooted in the expectation that section 100.4 would exempt the proposal from freeway agreements. Without this section, it would have been a futile and pointless drain of resources to engage the agencies, cities, and citizens in these complex administrative proceedings, only to have one or more cities block the proposal.” (Fn. omitted.)
 

 The City bases its request for a broader injunction on the waste and drain on public resources it claims are being caused by Caltrans’s efforts directed at building the Meridian Variation route under the assumption section 100.4 still provides authority to do so without a freeway agreement from the City.
 

 
 *1293
 
 This basis for injunctive relief fails because the assumption underlying Caltrans’s efforts is eliminated by our contrary interpretation of the statute as presently worded. Furthermore, the conduct for which the City finds fault was simply Caltrans doing its statutory job of planning the state’s freeways, and the declaratory relief upon which the injunctive remedy is based made no finding of waste or any other basis for a broad injunction. Finally, the City’s allegations of harm are nothing more than allegations, unsupported by real evidence. We expand on each one of these reasons for finding the trial court’s injunctive order was correct.
 

 1.
 
 Declaratory Relief Eliminates Reason for Injunction
 

 In making its assertion, the City admits Caltrans has been acting on an assumption which, with the finality of this opinion, is judicially rejected. Caltrans can no longer rely on the statute as it presently stands to avoid obtaining freeway agreements. “When the reason for a rule ceases, so should the rule itself.” (Civ. Code, § 3510.) By the same logic, if the reason for relief is eliminated, the relief should not be given.
 

 2.
 
 Caltrans’s Statutory Duties
 

 If the City intends, by its requested injunction, to prevent the efforts of Caltrans to formulate and process plans to build a freeway, even by legal means, it is beyond the scope of the underlying cause of action. Injunctive relief is a remedy, not a cause of action.
 
 (Art Movers, Inc.
 
 v.
 
 Ni West, Inc.
 
 (1992) 3 Cal.App.4th 640, 646 [4 Cal.Rptr.2d 689].) “A permanent injunction is an equitable remedy for certain torts or wrongful acts of a defendant where a damage remedy is inadequate. A permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action for tort or other wrongful act against a defendant and that equitable relief is appropriate. A permanent injunction is not issued to maintain the status quo but is a final judgment on the merits. (6 Witkin, Cal. Procedure (3d ed. 1985) Provisional Remedies, §§ 250, 251, pp. 216-218.) It is reviewed on appeal for the sufficiency of the evidence to support the judgment.
 
 (Richards
 
 v.
 
 Dower
 
 (1883) 64 Cal. 62, 64.)”
 
 (Ibid.)
 
 “A permanent injunction is merely a remedy for a proven cause of action. It may not be issued if the underlying cause of action is not established.”
 
 (Id.
 
 at p. 647.)
 

 To qualify for a permanent injunction, the plaintiff must prove (1) the elements of a cause of action involving the wrongful act sought to be enjoined and (2) the grounds for equitable relief, such as, inadequacy of the remedy at law. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 774, p. 218.)
 

 
 *1294
 
 The underlying cause of action here was for declaratory relief, and the declaratory relief decreed by the court and supported by the City both below and on appeal was granted in this order: “It is therefore ordered and adjudged that [the City] shall have final judgment against [Caltrans] as follows: [1] 1. Declaring that pursuant to Streets and Highways Code section 100.4, the time period available to [Caltrans] in which to obtain selection of a route by the California Transportation Commission for construction of the Long Beach Freeway (Route 710, formerly Route 7) without obtaining a freeway agreement pursuant to section 100.2 from [the City] expired in March 1985. [f] 2. Declaring that pursuant to Streets and Highways Code section 100.2, as to any freeway route not selected in accordance with the requirements of section 100.4, [Caltrans] may not hereafter construct a freeway through a city in the proposed route 710 corridor without complying with the provisions of Streets and Highways Code section 100.2 . . . .” (Unnecessary capitalization omitted.) The court then permanently enjoined Caltrans “from constructing a freeway through a city in the proposed route 710 corridor without compliance with the requirements of section 100.2 . . . .”
 

 While a court may enjoin governmental waste, waste is not established merely by an unrewarded expenditure of public funds. We must give government agencies latitude to exercise their judgment and discretion.
 
 (City of Ceres
 
 v.
 
 City of Modesto
 
 (1969) 274 Cal.App.2d 545, 555 [79 Cal.Rptr. 168].) Here, Caltrans is statutorily commissioned to plan the highways of California. (Gov. Code, § 14030.) “[T]he courts should not take judicial cognizance of disputes which are primarily political in nature, nor should they attempt to enjoin every expenditure which does not meet with a taxpayer’s approval. On the other hand, a court must not close its eyes to wasteful, improvident and completely unnecessary public spending . . . .”
 
 (City of Ceres, supra,
 
 274 Cal.App.2d at p. 555.)
 

 Caltrans has, until now, exercised its judgment in spending funds believing section 100.4 allowed construction of a freeway through the City without a freeway agreement. These expenditures do not fit the description of “waste” because they were a result of a difference of opinion concerning the effect of the statute. Therefore, the injunction, as granted, was sufficient to enforce the declaratory relief judgment.
 

 3.
 
 Lack of Evidence of Future Waste or Harm
 

 When a party applies for summary judgment, it must present a statement of undisputed facts specifying each fact necessary for the relief it seeks. (See
 
 *1295
 

 United Community Church
 
 v.
 
 Garcin
 
 (1991) 231 Cal.App.3d 327, 335 [282 Cal.Rptr. 368].) There is only one reference to harm in the joint statement of undisputed facts:
 
 ''''Construction
 
 of the freeway by any of the routes previously proposed by CalTrans, and by the presently proposed ‘Meridian Variation’ route, would impose
 
 some adverse impacts
 
 on [the City]. In advance of freeway construction Caltrans has acquired property within the City in expectation of freeway construction.” (Italics added.)
 

 This statement establishes harm only from
 
 construction,
 
 which the judgment already enjoins unless lawfully undertaken. While it is also established Caltrans
 
 has acquired
 
 property, it does not establish a threat of future acquisition or that such acquisition is improper or detrimental. Although the City attempts to make much of the past actions of Caltrans based on its belief in the continuing vitality of section 100.4, no evidence establishes an improper future threat, especially considering our determination Caltrans may not rely on section 100.4.
 

 The City makes a claim, buried on pages 18 through 20 of its reply brief (the last of 6 briefs, not including motions, filed in this appeal), that this court should exercise its discretion under Code of Civil Procedure section 909 and take additional evidence concerning expenditures of public resources caused by Caltrans’s action since the trial court ruled. This request appears to be an afterthought and does not take into account the fact that, in the interim between trial court judgment and finality of our opinion, Caltrans continues to operate under the belief and assertion it can build the Meridian Variation route without a freeway agreement. Exercising our discretion, we deny the City’s belated request. (See
 
 In re Marriage of Crook
 
 (1992) 2 Cal.App.4th 1606,1613 [3 Cal.Rptr.2d 905].) The evidence would be merely cumulative.
 

 B.
 
 Enforcement of Freeway Agreement Policy
 

 The City claims we should broaden the injunction to enforce against Caltrans its own long-standing policy of obtaining a freeway agreement from a city through which a freeway will be built even if the building of the freeway will not permanently close any street. Section 100.2 requires a freeway agreement only if one or more city streets will be closed.
 

 The City’s assertion is without merit for two reasons. First, there is no Caltrans proposal to build a freeway through the City that does not permanently close any street. According to the evidence provided by the parties and their contentions, the Meridian Variation route is the only currently pursued route through the City and construction under this plan would close
 
 *1296
 
 streets permanently. In effect, the City seeks yet another advisory opinion on what the law should be if a controversy arises. We will not oblige. While plaintiffs need not wait until they suffer actual harm before seeking injunctive relief, there must at least be threatened harm. (See
 
 Maria P.
 
 v.
 
 Riles
 
 (1987) 43 Cal.3d 1281, 1292 [240 Cal.Rptr. 872, 743 P.2d 93].)
 

 And second, there is no evidence a route through the City that does not permanently close a street would cause damage to the City. No such route is proposed, and there is no evidence the City would be damaged by any possible route. To merit an injunction, the plaintiff must show it will be harmed. (See
 
 Maria P.
 
 v.
 
 Riles, supra,
 
 43 Cal.3d at p. 1292.) The evidence does not support such a blindly imposed injunction. Therefore, we have no occasion to reflect on whether Caltrans’s policy should be enforced against it.
 

 The City has failed to establish it is entitled to a broader injunction. We therefore uphold the injunction as issued.
 

 Disposition
 

 Caltrans’s motion to dismiss the appeal and cross-appeal as moot is denied. The judgment is affirmed. The parties shall bear their own costs on appeal.
 

 Sims, Acting P. J., and Davis, J., concurred.
 

 Petitions for a rehearing were denied November 22, 1994, and the opinion was modified to read as printed above. The petition of appellant Department of Transportation for review by the Supreme Court was denied Feburary 1, 1995.