Filed 6/26/13  Didak v. Merrill Lynch Mortgage Investors CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARK F. DIDAK et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>MERRILL LYNCH MORTGAGE INVESTORS, INC. et al.,<br><br>    Defendants and Respondents. | B240704<br><br>(Los Angeles County<br>Super. Ct. No. SC114327)<br><br>**ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on June 12, 2013, and not certified for publication, be modified as follows:

1.  On page 7, footnote 5, lines 9-10 read as follows:

"(See former Civ. Code, §§ 2924 et seq [amended by Stats. 2012, c. 86 (A.B. 278), § 5].)"

It should read: "(See Civ. Code, § 2944.)"

Appellant's petition for rehearing is denied.  The foregoing does not change the judgment.

_____

**WOODS, Acting P. J.**          **ZELON, J.**          **SEGAL, J. (Assigned)**

Filed 6/12/13 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARK F. DIDAK et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>MERRILL LYNCH MORTGAGE INVESTORS, INC. et al.,<br><br>Defendants and Respondents. | B240704<br><br>(Los Angeles County<br>Super. Ct. No. SC114327) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cesar C. Sarmiento, Judge.  Affirmed.

Law Office of Mark F. Didak and Mark F. Didak for Plaintiffs and Appellants.

Wolfe & Wyman, Stuart B. Wolfe and Cathy L. Granger for Defendants and Respondents Merrill Lynch Mortgage Investors, Inc., HSBC Bank, USA, as Trustee of the Merrill Lynch Mortgage Investors Series 2006-AF2, Merrill Lynch Mortgage Lending, Inc., Citimortgage, Inc., individually and as successor by merger to ABN Amro Mortgage Group, Inc. and Wells Fargo Bank.

Wright, Finlay & Zak, Charles C. McKenna and Peter Watson for Defendant and Respondent Cal-Western Reconveyance Corporation.

Arbogast Bowen and David M. Arbogast; Howard Law and Vincent Howard for Amicus Curiae Consumer Attorneys of California in support of Plaintiffs and Appellants.

Appellants Mark and Anna Didak appeal from the judgment entered upon the trial court's order sustaining respondents' demurrer without leave to amend. On October 13, 2011, appellants filed a First Amended Complaint ("FAC") against Merrill Lynch Mortgage Investors, Inc. ("MLMI"), HSBC Bank, USA, N.A. ("HSBC"), Merrill Lynch Investors Trust, purportedly a real estate mortgage investment conduit ("REMIC"), Merrill Lynch Mortgage Lending, Inc. ("MLML"), Citimortgage, Inc. ("Citi"), Wells Fargo Bank, N.A., Stewart Title of California, Inc., and Cal-Western Reconveyance Corporation (collectively, "respondents"). Appellants' FAC alleged claims for fraud, quiet title, cancellation of deed of trust, declaratory relief, and wrongful credit reporting. Appellants also sought a temporary restraining order, a temporary injunction, and a permanent injunction against respondents.

Here appellants argue that respondents lack authority to service their mortgage.[1] Primarily, appellants allege respondents never received legal title to their mortgage due to a failed securitization of the mortgage under the governing pooling and servicing agreement ("PSA"). For the reasons set forth below, the trial court's order sustaining respondents' demurrer without leave to amend is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

On April 19, 2006, appellants executed a mortgage in favor of First Capital Mortgage on their condominium in Culver City, California. On June 1, 2006, First Capital sold appellants' mortgage to ABN Amro Mortgage Group, Inc. ("ABN") . According to appellants, ABN later sold the mortgage to an unidentified entity.

---

[1] Although in California promissory notes are secured by deeds of trust not mortgages, we use the term "mortgage" here for ease of reference. There is little practical difference between mortgages and deeds of trust. "[T]hey perform the same basic function, and [ ] a deed of trust is 'practically and substantially only a mortgage with power of sale.'" (*Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, 553.)

[2] The facts are taken from appellants' FAC. (See *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814 [we assume the truth of the plaintiffs' pleaded facts when reviewing a judgment of dismissal following a sustained demurrer].)

Following ABN's assignment of appellants' mortgage to the unidentified entity, Citi acquired ABN through a merger.

Appellants' challenge primarily relies, however, on another purported transfer of appellants' mortgage in 2006. During that year, MLMI, MLML, and HSBC purportedly created a real estate mortgage investment conduit ("REMIC") pursuant to a pooling and servicing agreement ("PSA"). Respondents have claimed legal title to appellants' mortgage since 2006, citing transfer of the mortgage to the REMIC pursuant to the terms of the PSA. Since that time, Citi has represented itself as the authorized servicer for appellants' loan. Since the purported creation of the REMIC in 2006, Citi has collected more than $147,000 in monthly mortgage payments from appellants.

In March, 2011, appellants stopped making their monthly mortgage payments to Citi.[3] Soon after, Citi engaged in numerous written and oral communications with appellants, in which Citi sought to collect further mortgage payments from appellants. Appellants refused to make further payments until Citi proved ownership of their mortgage. As a result, Citi retained Cal-Western to serve as its agent for the potential foreclosure on appellants' condominium. Around July 12, 2011, Cal-Western recorded a notice of default on appellants' mortgage and initiated foreclosure proceedings.

According to appellants, respondents never obtained authority to service their mortgage due to a failed securitization of the mortgage under the terms of the PSA. Alternatively, appellants allege respondents never obtained authority to service their mortgage because ABN aliened its interest in appellants' mortgage prior to ABN's merger with Citi, when it assigned the mortgage to an unidentified entity. Therefore, appellants allege that Citi never obtained authority to collect payments on their mortgage or foreclose on their home.

---

[3]     Appellants have not claimed that they have continued making mortgage payments to any other entity.

Based on these allegations, appellants filed a complaint alleging the following causes of action: (1) fraud, (2) quiet title, (3) cancellation of deed of trust, (4) declaratory relief, (5) wrongful credit reporting, and (6) injunctive relief.

Respondents filed a demurrer to appellants' FAC. In support of their demurrer, respondents argued that appellants: (1) lacked standing to challenge the validity of the assignment of their mortgage under the PSA; (2) failed to plead sufficient facts to support a fraud cause of action; and (3) failed to tender the remainder of their loan obligation, thereby barring a claim for quiet title. In regard to appellants' other claims, respondents argued that appellants failed to plead sufficient facts to show that respondents never received legal title to appellants' mortgage. The trial court sustained the demurrer without leave to amend. This appeal followed.

## DISCUSSION

### I. Standard of Review

This court applies a *de novo* standard of review to a trial court's order of dismissal following an order sustaining a demurrer. (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650.) In other words, this court exercises its "independent judgment about whether the complaint states a cause of action as a matter of law." (*Ibid.*) "In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." (*Howard Jarvis Taxpayers Assn. v. City of La Habra*, *supra*, 25 Cal.4th at p. 814.) "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

When a demurrer "is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Such a

4

showing can be made for the first time before the reviewing court. (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)

## II.    Applicable Law

The California Supreme Court has not addressed the issue of whether a borrower has standing to challenge the securitization of his or her mortgage under a PSA in a published opinion. Recently Division Three of the Fourth District Court of Appeal, in *dicta* noted that: "As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [the plaintiff homeowner] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions. (See *In re Correia* (Bankr.1st Cir.2011) 452 B.R. 319, 324-325 [debtors lacked standing to raise violations of pooling and service agreement].)" (*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, ___, 2013 WL 2145098, at *9.) The court in *Jenkins* also cited the appellant's lack of standing as a reason for affirming the trial court's decision to deny her an opportunity to amend her complaint. (*Id.* at *10.)

Notwithstanding a dearth of case law from California state courts on the matter, there are a number of federal opinions addressing this issue under California law. The overwhelming majority of these cases hold that borrowers lack standing to challenge whether their mortgages were properly securitized under the terms of the applicable PSAs when those borrowers were neither parties to, nor third-party beneficiaries of, the PSAs. (See *Sami v. Wells Fargo Bank* (N.D. Cal., Mar. 21, 2012, C 12-00108 DMR) 2012 WL 967051, at *6 ["To the extent Plaintiff bases her claims on the theory that Wells Fargo allegedly failed to comply with the terms of the PSA, the court finds that she lacks standing to do so because she is neither a party to, nor a third party beneficiary of, that agreement"]; *Junger v. Bank of America, N.A.* (C.D. Cal., Feb. 24, 2012, CV 11-10419 CAS VBKX) 2012 WL 603262, at *3 ["The Court finds that plaintiff lacks standing to challenge the process by which his mortgage was (or was not) securitized because he is

not a party to the PSA"]; *Almutarreb v. Bank of New York Trust Co., N.A.* (N.D. Cal., Sept. 24, 2012, C-12-3061 EMC) 2012 WL 4371410, at *2; *Deerinck v. Heritage Plaza Mortg. Inc.* (E.D. Cal., Mar. 30, 2012, 2:11-CV-01735-MCE) 2012 WL 1085520, at *5; *Ramirez v. Kings Mortg. Services, Inc.* (E.D. Cal., Nov. 8, 2012, 1:12-CV-01109-AWI) 2012 WL 5464359, at *5.)[4]

Additionally, federal courts throughout the country have reached similar conclusions when applying other states' nonjudicial foreclosure laws. (*In re Correia* (B.A.P. 1st Cir. 2011) 452 B.R. 319; *In re Smoak* (Bankr. S.D. Ohio 2011) 461 B.R. 510; *In re Veal* (B.A.P. 9th Cir. 2011) 450 B.R. 897; *In re Walker* (Bankr. E.D. Pa. 2012) 466 B.R. 271; *In re Washington* (Bankr. W.D. Pa. 2012) 469 B.R. 587.) Although one federal case applying California law held that a borrower was entitled to challenge defendants' authority to foreclose on their property based on an alleged violation of the governing PSA, that case involved a "unique set of facts" that are not present here. (See *Wise v. Wells Fargo Bank, N.A.* (C.D. Cal. 2012) 850 F.Supp.2d 1047, 1052; see also *McGough v. Wells Fargo Bank, N.A.* (N.D. Cal., June 18, 2012, C12-0050 TEH) 2012 WL 2277931 [distinguishing *Wise* from the typical securitization challenges because the FAC in that case alleged a "fairly unique set of facts," involving timely loan payments, a denial of a loan modification request, and fabricated loan documents].)

---

[4] "Although we may not rely on unpublished California cases, the California Rules of Court do not prohibit citation to unpublished federal cases, which may properly be cited as persuasive, although not binding, authority." (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155, fn. 6.)

**A.  Appellants Failed To Establish that Respondents Lack Authority to Service Their Mortgage[5]**

In their FAC, appellants allege "[a] recent investigation into the chain of title to [appellants'] loan establishes that legal ownership of the loan was never transferred to HSBC in its capacity as trustee for MLMI REMIC, or in any other capacity, as required by (a) *the Pooling and Service Agreement . . .* and/or (b) New York law, *which governs the PSA . . . .*"  (Emphasis added.)  Thus, appellants primarily rely on an alleged violation of the PSA to argue that respondents lack authority to collect payments on appellants' mortgage.  As discussed above, this argument has been consistently rejected by federal courts interpreting California's nonjudicial foreclosure statutory scheme.  (See *Sami*, *supra*, 2012 WL 967051, at *6.)

In their briefs on appeal, appellants attempt to sidestep the standing issue by asserting that they "are not suing to attack or enforce the PSA, or to attack the securitization of their mortgage."  Rather, appellants claim that the failed securitization is simply "evidence" that respondents never received legal title to their mortgage.  This is essentially the same argument.  Regardless of how framed or labeled all of their claims depend on the same contention – the mortgage was improperly securitized under the PSA.  As nearly every court addressing this issue in a published opinion has recognized, borrowers who are not a party to, or a third party beneficiary of, the PSA lack standing to allege a failed transfer due to improper securitization.  (*Junger v. Bank of America N.A.*,

---

[5]     Both parties devote discussion in their briefs to the issue of whether Article 3 of the California Commercial Code governs appellants' mortgage.  As the court in *Gomes v. Countrywide Home Loans, Inc., supra,* 192 Cal.App.4th 1149, recognized, California courts have refused to read additional requirements into California's statutory nonjudicial foreclosure scheme, which is codified in the Civil Code.  (*Id.* at p. 1154.)  Because respondents recorded a notice of default in 2011, and appear to have initiated foreclosure proceedings, the Civil Code governs appellants' mortgage.  (See former Civ. Code, § 2923.5 [amended by Stats. 2012, c. 86 (A.B. 278), § 5].)  The sections of the Civil Code governing nonjudicial foreclosures do not refer to the California Commercial Code.  (See former Civ. Code, §§ 2924 et seq [amended by Stats. 2012, c. 86 (A.B. 278), § 5].)  Therefore, Article 3 does not govern appellants' mortgage in this case.

*supra*, 2012 WL 603262, at *3; see also *Rodenhurst v. Bank of America* (D. Hawaii 2011) 773 F.Supp.2d 866, 899 ["The overwhelming authority does not support a cause of action based upon improper securitization"].)  As far as appellants' causes of action rely on the allegation that respondents violated the terms of the PSA, the trial court properly sustained respondents' demurrer on the ground that appellants lack standing to challenge the securitization of their mortgage.

Appellants make a second attempt to sidestep the standing hurdle by alleging that ABN aliened its interest in appellants' mortgage prior to ABN's merger with Citi. Appellants are allowed to show for the first time before this Court that there is a reasonable possibility any defect in their pleadings can be cured by amendment.  (See *Smith v. State Farm Mutual Automobile Ins. Co.*, *supra*, 93 Cal.App.4th at p. 711.)

However, they have failed to do so.  When the matter was addressed at oral argument, appellants did not articulate a plausible theory of liability independent of any purported breach of the PSA.  Likewise the appellate briefs do not offer a plausible alternative basis of liability.  Appellants copied Paragraph 11 of their FAC and pasted it into their opening and reply briefs on appeal.  Paragraph 11 alleges that "ABN Amro aliened any right, title or interest in plaintiffs' loan by selling it in 2006 . . . to an entity whose identity is currently unknown."  Notwithstanding the allegation that some other entity owns the loan,[6] appellants have not alleged that any entity, other than Citi, has made any attempts to collect mortgage payments from them since the purported transaction in 2006.  (See *Bernardi v. JPMorgan Chase Bank, N.A.* (N.D. Cal., Jan. 6, 2012, C-11-04543 RMW) 2012 WL 33894, at *2 ["Nor do plaintiffs allege that any third party has ever come forward attempting to enforce the debt, making plaintiffs' claim yet more implausible"].)  The failure to allege that any other entity has made efforts to collect on the note undermines any claim that the note was transferred prior to the time that Citi acquired ABN or that another entity other than REMIC owns appellants' mortgage.

---

[6]     Appellants do not dispute that they owe money on the mortgage obligation; they have not alleged that they have paid the outstanding balance owed on the note.

Appellants' allegations are insufficient to support appellants' claims that respondents lack authority to service their loan. In *Javaheri v. JPMorgan Chase Bank, N.A.* (C.D. Cal., Mar. 24, 2011, CV 10-08185 ODW FFMX) 2011 WL 1131518, an unpublished district court case cited by appellants, the court recognized that an allegation very similar to the one in the instant case was insufficiently pled because it could "only be characterized as a 'legal conclusion couched as a factual allegation' which the Court is not bound to accept." (*Id.* at *2, quoting *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 546 [127 S.Ct. 1955, 1959-60, 167 L.Ed.sd 929].) So too here, appellants attempt to couch a legal conclusion – that respondents never obtained legal title to their loan – as a factual allegation – that ABN transferred appellants' mortgage to an unidentified entity. Thus, appellants have failed to plead facts sufficient to show respondents are not authorized to service their loan and have failed to demonstrate a reasonable possibility they could cure the defects in their pleading if afforded the opportunity to amend.

**B. Appellants Failed to Plead Sufficient Facts to Support Their Causes of Action Against Respondents**

As discussed above, appellants' primary contention relies on the allegation that respondents never received legal title to appellants' mortgage due to a purported violation of the PSA. Appellants argue their mortgage was improperly securitized as required by the PSA, and as a result, Citi lacks authority to service appellants' mortgage. Alternatively, appellants allege that notwithstanding the purported violation of the PSA, respondents never received legal title to appellants' mortgage due to a sale of the mortgage to an unidentified entity in 2006, prior to the creation the REMIC.

Relying on these allegations, appellants seek to quiet title to their home, cancel the first deed of trust on their home, collect monetary damages for fraud and wrongful credit reporting, obtain a temporary restraining order against respondents, and obtain preliminary and permanent injunctions against respondents. For the reasons set forth below, appellants have failed to set forth facts sufficient to support their claims against respondents.

9

## 1. Fraud Cause of Action

Appellants base their fraud cause of action on respondents' "express and oral representations that it is the authorized servicer on plaintiffs' loan." As discussed above, appellants rely on the purported violation of the PSA to contend that respondents lack authority to service their loan. As far as appellants' fraud claim is based on the purported violation of the PSA, the claim fails because appellants lack standing to challenge the securitization of their mortgage under the PSA. (See *Sami*, *supra*, 2012 WL 967051, at *6.) Therefore, because appellants lack standing to challenge the securitization of their mortgage under the PSA, the court properly sustained the demurrer to the fraud claim without leave to amend. (See *Tarmann*, *supra*, 2 Cal.App.4th at pp. 157-158.)

## 2. Quiet Title Cause of Action

In their second cause of action, appellants seek to quiet title to their property securing the mortgage at issue. To state a cause of action for quiet title, a plaintiff must plead: (1) a legal description of the property that is the subject of the action; (2) the title of the plaintiff and the basis upon which such title is asserted; (3) the adverse claims to the title of the plaintiff against which a determination is sought; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the plaintiff against the adverse claims. (Code Civ. Proc., § 761.020.)

Aside from adequately pleading the statutory elements, "[i]t is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." (*Shimpones v. Stickney* (1934) 219 Cal. 637, 649; see also *Horton v. Cal. Credit Corp. Ret. Plan* (S.D. Cal. 2011) 835 F.Supp.2d 879, 893 ["even if [Code Civ. Proc., § 761.020] requirements are met, California courts have pronounced that in order to maintain a cause of action to quiet title, the mortgagor must allege tender or ability to tender the amounts admittedly borrowed"].) "This rule is based upon the equitable principle that he who seeks equity must do equity . . . a court of equity will not aid a person in avoiding the payment of his or her debts." (*Mix v. Sodd* (1981) 126 Cal.App.3d 386, 390.)

10

Here, appellants admit they have paid only $147,000 on their mortgage. They have not alleged that they have paid off the remainder of their debt, and they have made no offer to tender the remainder of their debt. Therefore, appellants cannot maintain a quiet title action. (See *Shimpones*, *supra*, 219 Cal. at p. 649 ["[A] mortgager cannot quiet his title against the mortgagee without paying the debt secured"]; see also *Lane v. Vitek Real Estate Industries Group* (E.D. Cal. 2010) 713 F.Supp.2d 1092, 1103 ["As plaintiffs concede they have not paid the debt secured by the mortgage, they cannot sustain a quiet title action against defendants"].)

For the reasons stated above, the trial court properly sustained the demurrer to the quiet title action without leave to amend.

### 3. Cancellation of Deed of Trust Cause of Action

In their third cause of action, appellants seek to cancel the deed of trust securing their mortgage. Civil Code section 3412 states, "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."

In their FAC, appellants allege that their deed of trust was transferred to respondents without the accompanying note, and "[b]ecause plaintiff's [deed of trust] was transferred without the note, the [deed of trust] must be canceled and declared void, with full reconveyance to plaintiffs." They have failed, however, to allege how this purported transaction (i.e., the transfer of the deed without the note) will result in serious injury if the deed of trust is not cancelled. (See Civ. Code § 3412; see also *Malfatti v. Mortgage Electronic Registration Systems, Inc.* (N.D. Cal., Nov. 29, 2011, C 11-03142 WHA) 2011 WL 5975055 [granting dismissal on cancellation action when plaintiffs alleged only an improper recording of their mortgage and set forth no explanation for how such improper recording would result in serious injury].)

In addition, appellants have not alleged that they have paid the outstanding balance owed on the note; they acknowledge that they have paid only a fraction of their obligation on their mortgage. As a result, some entity has an interest in receiving the

11

remainder of the obligation on appellants' mortgage. Therefore, even if appellants' note was never properly assigned to respondents as they allege, there are other parties who have an interest in receiving the remainder of the obligation. (See *Mata v. Citimortgage, Inc.* (C.D. Cal., Sept. 26, 2011, CV 10-9167 DSF PLAX) 2011 WL 4542723, at *3 ["Plaintiffs also ask for a declaration that the improper assignment extinguished various rights held under the note or deed of trust or that Plaintiffs . . . otherwise do not owe money on their note(s) . . . . If Plaintiffs' note was never assigned to Citimortgage or BofA, then there are other parties . . . who have an interest in those issues"].) Thus, any improper assignment to Citi would not serve to extinguish the rights and interests that others may have in the property. Consequently, the remedy appellants' seek—"full reconveyance" would not be viable.

For the reasons stated above, the trial court properly sustained the demurrer to the cancellation action without leave to amend.

### 4. Declaratory Relief Cause of Action

In their fourth cause of action, appellants seek a judicial declaration that no party other than appellants has any right, title or interest in appellants' loan, property, and deed of trust. Under Code of Civil Procedure section 1060, "[a]ny person . . . who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . may, in cases of actual controversy relating the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights . . . ."

Appellants base their declaratory relief claim on allegations that respondents never received legal title to their mortgage. Because appellants have failed to adequately plead that respondents never received legal title to their mortgage, their declaratory relief claim fails for the reasons set forth above. (See *Sami*, *supra*, 2012 WL 967051, *8.)

Appellants' declaratory relief claim fails for another reason as well. Appellants seek a declaration that respondents have no right to initiate or maintain foreclosure proceedings against appellants' property and that such proceedings must immediately be terminated. As the Fourth District recognized in *Gomes*, "'California appellate courts

12

have refused to read any additional requirements into the non-judicial foreclosure statute.'" (*Gomes v. Countrywide Home Loans, Inc., supra,* 192 Cal.App.4th at p. 1154.) This is so because California's nonjudicial foreclosure scheme provides "a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Ibid.*) "'These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.'" (*Ibid.*)

Here, appellants essentially seek a declaration that respondents lack the authority to foreclose on their property. Prior to the enactment of the Homeowner Bill of Rights (HBR) and the accompanying amendments to California's statutory nonjudicial foreclosure scheme there was nothing in the scheme that authorized a plaintiff to seek declaratory relief establishing whether a defendant has the right to foreclose. (See *Gomes v. Countrywide Home Loans, Inc.*, *supra*, 192 Cal.App.4th at p. 1154; see also *Ramirez*, *supra*, 2012 WL 5464359, at *10.) Therefore, because California's nonjudicial foreclosure scheme must be applied as it existed at the time respondents recorded the notice of default in 2011, appellants cannot seek a declaration that respondents lack authority to service their mortgage. (See *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 841; see also *McGough v. Wells Fargo Bank, N.A.* (N.D. Cal., Oct. 22, 2012, C12-0050 TEH) 2012 WL 5199411, at *5 (fn.4) ["[The HBR] amendments do not go into effect until Jan. 1, 2013 and there is no indication that the law is intended to be, or will be, applied retroactively"].) Therefore, the trial court properly sustained the demurrer to the declaratory relief claim.

### 5. Wrongful Credit Reporting Cause of Action

In their fifth cause of action, appellants allege that respondents breached Civil Code section 1785.25, subdivision (a), when they reported to consumer credit reporting agencies that appellants "were delinquent on their mortgage payments . . . when they knew or reasonably should have known that [appellants] were not delinquent . . . ." Civil Code section 1785.25, subdivision (a), provides: "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." In alleging a

13

violation of Civil Code section 1785.25, subdivision (a), appellants contend respondents "knew or reasonably should have known that plaintiffs were not delinquent because plaintiffs had and have no obligation to make payments on their loan to these [respondents] . . . ."

As discussed above, appellants have failed to adequately allege respondents never received legal title to their mortgage. Further, appellants have failed to show that they have continued making regular mortgage payments to *any* entity. As a result, appellants have caused their own delinquency in the mortgage payment process. (See *Javaheri v. JPMorgan Chase Bank, N.A.* (C.D. Cal., Aug. 13, 2012, 2:10-CV-08185-ODW) 2012 WL 3426278, at *6 [court recognizes that any injury suffered by the plaintiff was the result of his default on the mortgage].) Therefore, appellants have failed to show that respondents furnished any information that they knew or reasonably should have known was incomplete or inaccurate. (See Civ. Code, § 1785.25, subd. (a).)

### 6. Preliminary Restraining Order and Injunctive Claims For Relief

In their sixth cause of action, appellants assert claims for a preliminary restraining order, a temporary injunction, and a permanent injunction. "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." (*Shell Oil Co. v. Richter* (1942) 52 Cal.App.2d 164, 168.) Therefore, injunctive relief cannot be issued "if the underlying cause of action is not established." (*City of South Pasadena v. Department of Transportation* (1994) 29 Cal.App.4th 1280, 1293.)

As discussed above, appellants have failed to state a cause of action based on their allegations that respondents never received legal title to their mortgage. Therefore, appellants have failed to state grounds upon which injunctive relief may be granted. (See *Shell Oil Co.*, *supra*, 52 Cal.App.2d at p. 168; *City of South Pasadena*, *supra*, 29 Cal.App.4th at p. 1293.)

For the reasons stated above, the trial court properly sustained the demurrer to the wrongful credit reporting cause of action.

14

### III. The Homeowner Bill of Rights Does Not Assist Appellants' Cause

Finally, in their opening brief, appellants contend that regardless of whether they lack standing to challenge the securitization of their mortgage under the terms of the PSA, they nevertheless have the right to demand respondents prove ownership of their mortgage under the newly enacted HBR. HBR went into effect January 1, 2013. (See Civ. Code, § 2923.4.) According to appellants, respondents recorded a notice of default on July 12, 2011. As discussed below, the newly enacted HBR does not grant appellants any additional rights than those that existed under California's statutory nonjudicial foreclosure scheme at the time respondents filed the notice of default in 2011.

"California courts comply with the legal principle that unless there is an express retroactivity provision, a statute will *not* be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature . . . must have intended a retroactive application." (*Myers v. Philip Morris Companies, Inc., supra,* 28 Cal.4th at p. 841.) Nowhere in its text does HBR state that it applies retroactively. Further, appellants do not point to any portion of the statutory scheme's text or its legislative history that suggests that the California Legislature intended HBR to apply retroactively. Because HBR went into effect after respondents filed the notice of default in 2011, it does not grant appellants new rights upon appeal. Therefore, California's nonjudicial foreclosure statutory scheme as it existed at the time respondents recorded the notice of default in 2011 applies to this matter.

### *DISPOSITION*

The judgment is affirmed. Respondents are entitled to costs on appeal.


                                                    **WOODS, Acting P. J.**

**We concur:**


            **ZELON, J.**                              **SEGAL, J.***

---

*Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.