Filed 2/28/25  Disanto v. Surf City Investors CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MICHAEL DISANTO et al.,<br><br>        Plaintiffs and Appellants,<br><br>    v.<br><br>SURF CITY INVESTORS, LLC,<br>as Trustee, etc.,<br>        Defendant and Respondent. | C098207<br><br>(Super. Ct. No. 34-2021-00307239-CU-OR-GDS) |

On September 10, 2007, spouses Michael DiSanto and Madeleine DaSalla (collectively, plaintiffs) executed a promissory note in favor of nonparty Brett Mattos. The note was secured by a deed of trust to residential real property in Sacramento owned at the time by DaSalla as her separate property.  DaSalla alone signed the deed of trust the same day she executed the promissory note.  Approximately a month later, DaSalla signed and recorded a grant deed changing title in the Sacramento property from herself individually to herself and DiSanto as joint tenants.  The following month, Mattos recorded the deed of trust signed by DaSalla.

1

DaSalla made regular payments on the promissory note until 2010, when she and DiSanto declared bankruptcy. The promissory note was discharged in the bankruptcy proceedings, but the deed of trust in favor of Mattos remained as a lien on the property, a fact which plaintiffs allege they only discovered in 2019, when they listed the property for sale.

In September of 2020, Mattos assigned his deed of trust to 949-5540 Investment Trust and defendant Surf City Investors, LLC, as trustee, which later filed a notice of default and election to sell under the deed of trust. Plaintiffs filed this action, among other things, to quiet title to the property. After the filing, the property was sold at a trustee's sale. Defendant demurred to the first amended complaint and the trial court sustained the demurrer with leave to amend. However, when plaintiffs failed to file a second amended complaint within the time allowed, defendant successfully moved to dismiss the action.

On appeal, plaintiffs assert: (1) they were excused from the rule requiring that they tender payment as a prerequisite to advancing their causes of action seeking to set aside the trustee's sale because the deed of trust was void as it was discharged in bankruptcy and signed by only one of the spouses; the trial court erred in sustaining the demurrer to (2) their cause of action to quiet title; (3) their request for injunctive relief; (4) their cause of action seeking an accounting; and their causes of action to recover damages for (5) negligence and; (6) violation of the unfair competition law. Plaintiffs also argue that (7) the trial court erred in refusing to allow them to amend their first amended complaint. We will affirm the judgment.

BACKGROUND

*Factual Background*

On September 10, 2007, plaintiffs, who were married to each other, both executed a promissory note in favor of Mattos in the amount of $73,000, secured by a deed of trust on a piece of real property owned at the time by DaSalla alone as separate property. The

2

note is entitled, "NOTE SECURED BY DEED OF TRUST," and specified, "[t]his note is secured by the DEED OF TRUST to Brett Mattos . . . ."

On the same day, DaSalla individually executed a deed of trust securing the promissory note, in which she granted, transferred, and assigned to Mattos as trustee an interest in the subject real property in Sacramento. Although there was a space provided for his signature, DiSanto did not sign the deed of trust. The deed of trust was not recorded until November 6, 2007.

Separately, DaSalla executed a grant deed on October 11, 2007, recorded on October 16, 2007, granting title in the subject real property from herself individually to herself and DiSanto, "husband and wife, as joint tenants." Thus, this conveyance was made *after* DaSalla executed the deed of trust in favor of Mattos, but *before* Mattos recorded the deed of trust.

DaSalla made payments on the promissory note for approximately three years, until 2010. That year, plaintiffs filed for Chapter 7 bankruptcy protection. The bankruptcy court entered its final decree in April 2011.

On or about September 11, 2020, Mattos sold and assigned the deed of trust to defendant. On April 23, 2021, defendant recorded a notice of default and election to sell under a deed of trust. In November 2021, a trustee's deed upon sale was filed in Sacramento County, recording the trustee's sale of the subject real property. Defendant was identified as the trustee and grantee.

*The Operative Complaint*

Plaintiffs' first amended complaint asserted causes of action (1) to quiet title, (2) for declaratory relief, (3) for injunctive relief, (4) for an accounting, and to recover damages for (5) negligence, and (6) violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.).

In the first cause of action, plaintiffs sought to quiet title on the ground that the deed of trust, signed by only DaSalla, was void under Family Code section 1102,

3

subdivision (a) because "both spouses must sign a deed of trust that encumbers real estate held as community property" and DiSanto did not execute the document.

In the second cause of action, for declaratory relief, plaintiffs sought a judicial determination of the parties' rights and duties and the amounts owing to defendant. Plaintiffs also alleged they were not required to tender amounts owed because, when "the amount owing is disputed and when the lender demands excessive unwarranted amounts in a Notice of Default . . . , the tender rule should not apply."

In the third cause of action for injunctive relief, plaintiffs sought to have the nonjudicial foreclosure sale enjoined. In the fourth cause of action for an accounting, plaintiffs stated that the "amount of money Plaintiff owes to defendant . . . is unknown to plaintiff and cannot be determined without an accounting by defendant." In the fifth cause of action, seeking to recover damages for negligence, plaintiffs alleged that defendant breached its duty of care to plaintiffs in servicing the loan. Finally, in the sixth cause of action, plaintiffs alleged that defendant engaged in numerous deceptive business practices in violation of the unfair competition law. (Bus. & Prof. Code, § 17200 et seq.)

*Defendant's Demurrer*

Defendant demurred to the first amended complaint, arguing that plaintiffs failed to satisfy the condition precedent of alleging tender of all amounts due under the note, barring their claims. Defendant also asserted that the cause of action to quiet title was time-barred under the four-year limitation period in Code of Civil Procedure section 343, and that any challenge to the validity of the loan under Family Code section 1102 was also time-barred because such claims must be advanced within one year of recording. Defendant argued the cause of action seeking to enjoin the sale of the property no longer presented a justiciable controversy because the sale had already occurred. As for the cause of action premised on the unfair competition law, defendant argued plaintiffs lacked standing because any alleged wrongful conduct in the foreclosure process after plaintiffs' default did not cause their purported injuries.

4

Defendant also sought judicial notice of several exhibits. One exhibit of note was a schedule of creditors holding unsecured nonpriority claims in plaintiffs' 2010-2011 Chapter 7 bankruptcy. It listed the promissory note with Mattos among the claims (plaintiffs represent that the note was erroneously listed as unsecured). Another was the Sacramento County recording of the trustee's deed upon sale, dated November 19, 2021, memorializing the sale of the subject real property in foreclosure.

*Plaintiffs' Opposition*

In opposing the demurrer, plaintiffs asserted that the tender rule did not apply because, among other things, the amount owed was disputed and they alleged that the deed of trust was void on its face. They argued their quiet title cause of action was not time-barred, claiming the limitations period did not begin to run until they discovered in 2019 that the deed of trust still existed. Nor, they argued, were their claims time-barred under Family Code section 1102. Plaintiffs conceded their cause of action seeking to enjoin the trustee sale was moot and agreed to withdraw that cause of action. Lastly, they requested leave to amend in the event the trial court deemed their complaint deficient.

*Ruling, Ex Parte Motion to Dismiss, and Judgment*

The trial court sustained the demurrer in its entirety and granted leave to amend except as to the cause of action for injunctive relief, and gave plaintiffs until August 12, 2022, to file a second amended complaint.

On August 18, 2022, defendant filed an ex parte motion pursuant to Code of Civil Procedure section 581, subdivision (f)(2) and California Rules of Court, rule 3.1320(h), to dismiss the first amended complaint for plaintiffs' failure to amend their pleading within the time specified. The trial court granted defendant's motion and filed a judgment dismissing the action with prejudice.

## DISCUSSION

### I

### *Standard of Review*

A demurrer tests the sufficiency of the complaint and raises only questions of law. (*Tran v. Nguyen* (2023) 97 Cal.App.5th 523, 528; Code Civ. Proc., § 589, subd. (a).) "In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) We also consider the complaint's exhibits. (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Defendant argues that the appropriate standard of review is abuse of discretion. We agree, but only as to the trial court's dismissal under Code of Civil Procedure section 581. (Code Civ. Proc., § 581, subd. (f)(2); see *Gitmed v. General Motors Corp.* (1994) 26 Cal.App.4th 824, 827 [an appellate court reviews a trial court's ruling on a motion to dismiss under Code Civ. Proc. § 581, subd. (f)(2) for abuse of discretion].) In reviewing the trial court's underlying order sustaining the demurrer, we examine the matter de novo. (*T.H. v. Novartis Pharmaceuticals Corp., supra*, 4 Cal.5th at p. 162; see *Shaw v. Los Angeles Unified School District* (2023) 95 Cal.App.5th 740, 753-754 [failure to amend a complaint following a successful demurrer is treated on appeal as a waiver of unpled allegations, but we review the challenged pleading de novo].)

### II

### *Quiet Title*

A.     *Quiet Title Action Generally*

"The purpose of a quiet title action is to establish title against any adverse claims to property or any interest therein." (*Water for Citizens of Weed California v. Churchwell*

*White LLP* (2023) 88 Cal.App.5th 270, 281, citing Code Civ. Proc., § 760.020, subd. (a).) "Unlike an action for cancelling an instrument, which is aimed at a particular instrument that is a cloud on the property owner's title, an action to quiet title 'is for the purpose of stopping the mouth of a person who has asserted or is asserting a claim to the plaintiff's property. . . . It is not aimed at a particular piece of evidence, but at the pretensions of an individual.' " (*Water for Citizens of Weed California, supra*, at p. 281, quoting *Castro v. Barry* (1889) 79 Cal. 443, 446.) "The ultimate fact to be found is the ownership of the property." (*Water for Citizens of Weed California,* at p. 281.) "To prevail on a quiet title claim, a plaintiff must establish title to the property in dispute." (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1193; see Code Civ. Proc., § 761.020.)

B.      *Effect of Bankruptcy Proceedings*

As a threshold matter, plaintiffs argue that the underlying debt was discharged in Chapter 7 bankruptcy in 2011, and it is therefore void. We conclude that the deed of trust given to Mattos and later assigned to defendant passed through the bankruptcy proceedings unaffected and is not void.

According to the first amended complaint, DaSalla paid on the promissory note for approximately three years until 2010, the year plaintiffs filed for bankruptcy protection. The note was discharged in the bankruptcy proceedings. A discharge of debtor and final decree filed on April 6, 2011, granted plaintiffs a discharge under title 11 United States Code section 727 and ordered the case closed.

But a "discharge is neither effective nor necessary to void a lien or otherwise impair a creditor's statelaw right of foreclosure." (*HSBC Bank USA, N.A. v. Blendheim* (*In re Blendheim*) (9th Cir. 2015) 803 F.3d 477, 493.) "As defined under the Bankruptcy Code, a 'discharge' operates as an injunction against a creditor's ability to proceed *against a debtor personally*." (*Id*. at pp. 493-494, italics added, citing 11 U.S.C. § 524 (a)(2).) "A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation. [Citation.] However, such a discharge extinguishes

7

only 'the personal liability of the debtor.' [Citation]. . . . [T]he Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." (*Johnson v. Home State Bank* (1991) 501 U.S. 78, 82-83, italics omitted.) Thus, "[d]ischarges leave unimpaired a creditor's right to proceed *in rem* against the debtor's property." (*In re Blendheim, supra*, at p. 494, citing *Johnson*, *supra*, at p. 84.) In other words, it "is well settled that valid, perfected liens and other secured interests pass through bankruptcy unaffected." (*Cortez v. American Wheel* (*In re Cortez*) (Bankr. 9th Cir. 1995) 191 B.R. 174, 177.)

Contrary to plaintiffs' contention, the lien (deed of trust) passed through the bankruptcy proceedings unaffected. Nor did the bankruptcy proceedings create an exception to the requirement that a plaintiff pursuing a quiet title action must tender amounts owed and secured by the deed of trust, an issue to which we now turn.

C.    *The Tender Requirement*

Plaintiffs argue that the alleged debt arising from the promissory note is not owed both because it was discharged in the bankruptcy proceedings, discussed *ante*, and because the deed of trust is void under Family Code section 1102 since it was not executed by DiSanto. Consequently, they assert that tender of the amount owed was not required, and the failure to satisfy the tender requirement does not foreclose their quiet title cause of action.

We conclude that the tender requirement applied and plaintiffs failed to plead or establish compliance with the requirement or an exception to it.

"A borrower may not . . . quiet title against a secured lender without first paying the outstanding debt on which the mortgage or deed of trust is based." (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86.) "Because the action is in equity, a defaulted borrower who seeks to set aside a trustee's sale is required to do equity before the court will exercise its equitable powers. [Citation.] Consequently, as a condition precedent to an action by the borrower to set aside the trustee's sale on the

8

ground that the sale is voidable because of irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the debt for which the property was security." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112 (*Lona*).)

Plaintiffs have not alleged that they tendered the amount owed, but do raise two of the recognized exceptions to the tender requirement. First, "no tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face." (*Lona, supra*, 202 Cal.App.4th at p. 113.) Second, "tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale." (*Ibid.*)

With regard to the claim that the deed of trust was void on its face, plaintiffs rely on Family Code section 1102. That section provides, in pertinent part, that "both spouses, . . . are required to join in executing an instrument by which . . . community real property or an interest therein . . . is sold, conveyed, or encumbered." (Fam. Code, § 1102, subd. (a).) Thus, if plaintiffs owned the subject real property as community property, the deed of trust may be subject to being set aside because only one of the spouses executed it. (See *Trenk v. Soheili* (2020) 58 Cal.App.5th 1033, 1044.)

Plaintiffs married in 2004. On September 10, 2007, plaintiffs both executed the note, and DaSalla individually signed the deed of trust. The deed of trust granted, transferred, and assigned the real property to Mattos as trustee. Although there was a signature block for DiSanto's signature, he did not sign the deed of trust.

Plaintiffs concede, however, that, when she executed the deed of trust, DaSalla owned the real estate as her separate property. Though she did execute a grant deed a month *later* conveying the property from herself individually to herself and DiSanto as joint tenants, when she executed the deed of trust on September 10, 2007, DaSalla alone owned the real property. As her separate property, DaSalla could freely convey or encumber the real property. (Fam. Code, § 770, subd. (b) [a "married person may, without the consent of the person's spouse, convey the person's separate property"].)

9

Plaintiffs attach significance to the fact that Mattos recorded his deed of trust after DaSalla executed the grant deed conveying the property to herself and DiSanto. They argue that because under Family Code section 1102, "both spouses, . . . are required to join in executing an instrument by which . . . community real property or an interest therein . . . is sold, conveyed, or encumbered" (Fam. Code, § 1102, subd. (a)), *at the time the deed of trust was recorded*, the real property was held as community property and, because it lacked DiSanto's signature, the deed of trust was void.

The deed of trust, however, did not encumber community real property when it was executed; it encumbered DaSalla's separate property. Family Code section 1102, subdivision (a), which pertains only to "community real property," did not apply when DaSalla executed the deed of trust. The subsequent execution and recordation of the grant deed, transferring the property from DaSalla to herself and DiSanto as joint tenants, did not retroactively render the deed of trust void on its face merely because the deed of trust had not yet been recorded. The act of recording served only to furnish record notice of that interest in the property. (See *Longview Internat., Inc. v. Stirling* (2019) 35 Cal.App.5th 985, 991 [the "purpose of the recording statutes is to protect purchasers of real property by giving them notice of all existing and outstanding estates, titles, or interests in the property, whether valid or invalid, which may affect their rights as purchasers" (italics omitted)].)

Moreover, prior to recording, the deed of trust was valid as to DiSanto as well as DaSalla because an "unrecorded instrument is valid as between the parties thereto and those who have notice thereof." (Civ. Code, § 1217.) While plaintiffs assert DiSanto lacked notice of the deed of trust before 2019, this claim is belied by the record. DiSanto plainly had at least constructive notice of the deed of trust upon executing the note; the note repeatedly referenced the deed of trust, including the title of the note, "NOTE SECURED BY DEED OF TRUST," and the statement that the "note is secured by the DEED OF TRUST to Brett Mattos," and further stated that the note was "cross-

10

collateralized with notes and deeds of trusts against the properties" specified, including the subject real property. (See *Wilson v. Coffey* (1928) 92 Cal.App. 343, 349 [a "person is presumed to have knowledge of the contents of an instrument executed by him or in his possession [citation], and of the facts concerning which the recitals in the instrument would put a prudent man upon inquiry"].)

Even if the execution and recording of the grant deed after the execution but before the recording of the deed of trust gave rise to a cloud on title in the deed of trust, such would render that instrument voidable, not void on its face. Cases interpreting the predecessors to Family Code section 1102 "have held that unauthorized gifts, sales or encumbrances of community property are not void, but voidable, and this only at the instance of the other spouse or his or her personal representative." (*Clar v. Cacciola* (1987) 193 Cal.App.3d 1032, 1036; accord, *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 30 [when a nonconsenting spouse timely challenges a transfer made in violation of the predecessor to Fam. Code, § 1102, the transfer is voidable]; *Safarian v. Govgassian* (2020) 47 Cal.App.5th 1053, 1070; see also *Trenk v. Soheili, supra*, 58 Cal.App.5th at pp. 1044-1049.)

Contrary to plaintiffs' contention, Family Code section 1102 does not provide that, where both spouses do not execute an instrument by which community real property is conveyed or encumbered, the instrument is "void in its entirety." The case law only establishes that such an instrument is voidable. Given this, the exception to the tender requirement where "no tender will be required . . . because the trustee's deed is void on its face" (*Lona, supra*, 202 Cal.App.4th at p. 113) would not apply.[1]

---

[1]      Plaintiffs also assert that the deed of trust was voided by DiSanto. A supplemental brief filed in the trial court, and the first amended complaint, both stated that DiSanto "has maintained and does hereby cancel and void the Deed of Trust as never being a party to it." But " '[a] voidable act takes its full and proper legal effect unless and until it is disputed and set aside by some tribunal, entitled so to do. [Citation.] "Voidable" means

11

Turning to the second claimed exception to the tender requirement, plaintiffs neither allege nor offer proof of circumstances that would render adherence to the tender requirement inequitable. In their first amended complaint, plaintiffs alleged that tender was not required where "the amount owing is disputed and when the lender demands excessive unwarranted amounts in a Notice of Default . . . ." However, a dispute about the amount owed does not excuse the requirement of tender. (See *Wilbur v. Griffins* (1922) 56 Cal.App. 668, 678 [without tendering the amount owed, the plaintiff will not be heard to complain in equity; nor will a dispute as to the amount owed excuse the tender requirement].)

The Court of Appeal in *Lona* described a qualifying inequity in discussing the circumstances in *Humboldt Savings Bank v. McCleverty* (1911) 161 Cal. 285. There, "the defendant's deceased husband borrowed $55,300 from the plaintiff bank secured by two pieces of property. The defendant had a $5,000 homestead on one of the properties. [Citation.] When the defendant's husband defaulted on the debt, the bank foreclosed on both properties. In response to the bank's argument that the defendant had to tender the entire debt as a condition precedent to having the sale set aside, the court held that it would be inequitable to require the defendant to 'pay, or offer to pay, a debt of $57,000, for which she is in no way liable' to attack the sale of her $5,000 homestead." (*Lona, supra*, 202 Cal.App.4th at p. 113, fn. omitted, citing *Humboldt Savings Bank, supra*, at pp. 287, 291.) No analogous inequity is alleged here.

Plaintiffs have neither alleged nor established satisfaction of the tender requirement, a condition precedent to this cause of action and the relief they seek, or that

___

subject to be avoided by judicial action of a court of adequate jurisdiction. [Citation.]' " (*White Dragon Productions, Inc. v. Performance Guarantees, Inc.* (1987) 196 Cal.App.3d 163, 172, quoting *Depner v. Joseph Zukin Blouses* (1936) 13 Cal.App.2d 124, 127.) Plaintiffs have not alleged or established that they have had the deed of trust declared void by a court with jurisdiction to do so.

12

any exception to the tender requirement applies. (See generally *Lona, supra*, 202 Cal.App.4th at pp. 112-113.) " 'The rules which govern tenders are strict and are strictly applied . . . .' " (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439.) Plaintiffs' quiet title cause of action fails on this ground alone, and the trial court properly sustained defendant's demurrer to this cause of action. Accordingly, we need not address the parties' contentions concerning (1) whether the action was timely, and (2) whether plaintiffs were equitably or judicially estopped from asserting their cause of action.

III

*Injunctive Relief*

Plaintiffs assert that the preliminary injunction should have been granted and the demurrer challenging it overruled because plaintiffs' property was threatened with imminent foreclosure and injunctive relief was appropriate to forestall foreclosure until the validity of the deed of trust could be litigated. We conclude the trial court properly sustained the demurrer as to the request for injunctive relief.

A "preliminary injunction is a provisional remedy meant to prevent harm or preserve the status quo pending a trial on the merits. [Citation.] Typically, it is not, in itself, a cause of action [citation]; thus, ordinarily, a preliminary injunction may be sought only when the underlying cause of action on which the provisional remedy rests is presented for decision through the pleadings." (*Department of Fair Employment and Housing v. Superior Court of Kern County* (2020) 54 Cal.App.5th 356, 384.) A permanent injunction is not a provisional remedy, but rather a final judgment on the merits. (*City of South Pasadena v. Department of Transportation* (1994) 29 Cal.App.4th 1280, 1293.) Similar to a preliminary injunction, however, a " 'permanent injunction is merely a remedy for a proven cause of action. It may not be issued if the underlying cause of action is not established.' " (*Ibid.*)

Plaintiffs' purported third cause of action, for injunctive relief, incorporates the allegations preceding it, including those pertaining to plaintiffs' quiet title cause of action.

13

It further alleges that defendant intended to sell the subject real property "all to plaintiff's great and irreparable injury and loss, for which damages will not adequately compensate plaintiff . . . ."

Plaintiffs' injunctive relief cause of action is dependent upon their quiet title action. There is no other basis in the complaint to support a claim to the subject property or an injunction enjoining the trustee's sale. In other words, the quiet title cause of action is the "underlying cause of action" on which plaintiffs' request for injunctive relief rests. (*Department of Fair Employment and Housing v. Superior Court of Kern County, supra*, 54 Cal.App.5th at p. 384; *City of South Pasadena v. Department of Transportation, supra*, 29 Cal.App.4th at p. 1293.) Because we have concluded the trial court properly sustained the demurrer as to plaintiffs' quiet title cause of action, plaintiffs' pleading for injunctive relief necessarily fails. We also note that (1) the trustee's sale has taken place, albeit with defendant as grantee (see generally *Billesbach v. Specialized Loan Servicing LLC* (2021) 63 Cal.App.5th 830, 845 [under Civ. Code, § 2924.12, subds. (a) & (b), a borrower may sue for injunctive relief before a foreclosure sale is recorded and for monetary damages thereafter]), and (2) plaintiffs in the trial court conceded that their cause of action seeking to enjoin the trustee's sale had been rendered moot because the sale had taken place and they "agree[d] to remove this cause of action."

Plaintiffs also assert, for the first time in their reply brief, that the demurrer as to their declaratory relief cause of action should have been overruled. They argue that defendant has "included no opposition," a curious contention given that plaintiffs did not raise their declaratory relief cause of action in their opening brief. " ' "Obvious considerations of fairness in argument demand that the appellant present all . . . points in the opening brief. To withhold a point until the closing brief would deprive the respondent of [the] opportunity to answer it or require the effort and delay of an additional brief by permission. Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present

14

them before." ' " (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764, quoting *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8; accord, *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)  Absent a showing of good cause, we do not consider plaintiffs' contentions pertaining to their cause of action seeking declaratory relief.

IV

*Accounting*

Plaintiffs argue the trial court should have overruled the demurrer as to the accounting cause of action because they have established the facts necessary to demand an accounting.  We disagree.

"An action for an accounting has two elements:  (1) 'that a relationship exists between the plaintiff and defendant that requires an accounting' and (2) 'that some balance *is due the plaintiff* that can only be ascertained by an accounting.' " (*Sass v. Cohen* (2020) 10 Cal.5th 861, 869, italics added.)  Here, even assuming the existence of a qualifying relationship, plaintiffs have not alleged that some balance is due *to them from defendant* that can only be ascertained by an accounting.  Rather, they seek an accounting of the money *they owe* to defendant.  Plaintiffs cite no authority establishing that an accounting cause of action stands for the purpose of determining amounts owed *by the plaintiff to the defendant*.  (See *id*. at p. 869 [elements of accounting cause of action including that some balance is due plaintiff]; *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179 [same]; see also *Baxter v. Krieger* (1958) 157 Cal.App.2d 730, 731-732 [plaintiff is not entitled to an accounting where no amounts were found to be due from the defendant to the plaintiff].)

In their reply brief, plaintiffs argue that defendant's "assertion that no cause of action for accounting can be supported due to a play on words or a typographical error in the First Amended Complaint is a non-issue.  [Citation.]  That is a quite simple amendment for a cause of action."  We are not persuaded.  The first amended complaint

15

plainly seeks an accounting for the amounts plaintiffs owe defendant.  Elsewhere, the complaint repeatedly addresses amounts plaintiffs owed defendant and does not contain any allegation of amounts owed by defendant to plaintiffs.  The trial court concluded plaintiffs failed to state a cause of action because their cause of action for an accounting failed to plead facts alleging defendant owed plaintiffs a sum of money.  In their opening brief on appeal, plaintiffs did not argue that there was a "play on words or a typographical error" in the first amended complaint or that they intended to allege that defendant owed them some sum of money.  To the extent plaintiffs are arguing in their reply brief that they intended to allege that an accounting is required because defendant owes them some sum of money, or that they can amend their complaint with such allegations so as to cure a defect, they cannot raise these new arguments or new theories in their reply brief on appeal.  (*Simpson v. The Kroger Corp.* (2013) 219 Cal.App.4th 1352, 1370 [raising "a new theory in a reply brief is improper and unfair to defendant"; we may decline to consider such a theory if no good reason is shown for the delay in raising the theory]; *Neighbours v. Buzz Oates Enterprises, supra*, 217 Cal.App.3d at p. 335, fn. 8 [in the absence of a showing of good cause for failure to present them earlier, points raised for the first time in a reply brief will not be considered].)

Because they have not alleged one of the required elements, plaintiffs' pleading fails to state a cause of action for an accounting.  The trial court properly sustained the demurrer to the accounting cause of action.

V

*Negligence*

Plaintiffs assert the demurrer to the negligence cause of action should have been overruled based on a line of cases, part of a former split of authority, holding that a lender may owe a borrower a duty of reasonable care in reviewing a loan modification request once the lender undertakes to consider it.  We conclude the trial court properly sustained the demurrer as to plaintiffs' negligence cause of action.

16

To state a cause of action for negligence, a plaintiff must plead that the defendant owed the plaintiff a legal duty of care, the defendant breached the duty, and that the breach was a proximate or legal cause of the plaintiff's injuries. (See *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.) Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." (*Nymark v. Heart Federal Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096.)

According to plaintiffs, "there is a split of authority as to whether a loan modification falls within the scope of traditional money-lending activities," and thus whether the lender owes a negligence duty of care to the borrower, and plaintiffs cite cases on both sides of this former split. We first note that there is no loan modification involved here. In any event, what plaintiffs fail to acknowledge is that our Supreme Court resolved this former split of authority more than two years ago, and, in doing so, disapproved of the cases and reasoning on which plaintiffs rely.

In *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, the Supreme Court "address[ed] the issue dividing the lower courts: Does a lender owe the borrower a tort duty sounding in general negligence principles to . . . 'process, review and respond carefully and completely to [a borrower's] loan modification application,' such that upon a breach of this duty the lender may be liable for the borrower's economic losses—i.e., pecuniary losses unaccompanied by property damage or personal injury?" (*Id*. at p. 915.) The Supreme Court concluded "there is no such duty . . . ." (*Ibid*.) The Supreme Court also disapproved of several cases, including the three cases on which plaintiffs rely, to the extent that those cases were inconsistent with *Sheen*. (*Id*. at p. 948, fn. 12 [disapproving of *Rossetta v. CitiMortgage, Inc.* (2017) 18 Cal.App.5th 628; *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150; and *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941].) Plaintiffs' briefing relies almost entirely on these cases and their reasoning, and fails to mention the Supreme Court's decision in *Sheen*,

17

which was filed long before plaintiffs filed their opening brief and which disapproved of these cases and the very reasoning on which plaintiffs rely.

In the absence of a duty of care, the trial court properly sustained defendant's demurrer to plaintiffs' negligence cause of action.

VI

*The Unfair Competition Law*

Plaintiffs argue that the demurrer to their unfair competition law cause of action should have been overruled because their claims were properly supported with factual documentation.  We disagree.

"California's unfair competition law bars 'unfair competition' and defines the term as a 'business act or practice' that is (1) 'fraudulent,' (2) 'unlawful,' or (3) 'unfair.' " (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1135; see Bus. & Prof. Code, § 17200 et seq.)  "Each is its own independent ground for liability under the unfair competition law [citation], but their unifying and underlying purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' " (*Shaeffer, supra*, at p. 1135.)

"A person has standing to bring a claim under the unfair competition law . . . only if she establishes that (1) she 'has suffered' 'economic injury' or 'damage,' and (2) this injury or damage 'was the result of, i.e., caused by,' the unfair business practice . . . 'that is the gravamen of [her] claim.' " (*Shaeffer v. Califia Farms, LLC, supra*, 44 Cal.App.5th at p. 1137, italics omitted, quoting *Kwikset Corp. v. Superior Court of Orange County* (2011) 51 Cal.4th 310, 322, 326.)

In the first amended complaint, plaintiffs alleged defendant committed a number of acts that constituted deceptive business practices "with respect to mortgage loan servicing and foreclosure of residential property and related matters . . . ."  The complaint elsewhere specifies that, after executing the note in September 2007, DaSalla paid on the note for approximately three years, and that plaintiffs commenced their bankruptcy

18

proceeding in 2010. Plaintiffs alleged that, in the bankruptcy proceeding, the promissory note was discharged, although the deed of trust remained. The complaint further alleged that, at some point between 2019 and 2021, Mattos sold the deed of trust to defendant. The first amended complaint continues: "Immediately thereafter . . . defendant . . . caused to be recorded a Notice of Default and Election to Sell . . . ."

As the trial court concluded with regard to a number of plaintiffs' allegations, defendant did not engage in acts that involved mortgage loan servicing such as misapplying or failing to apply customer payments; failing to provide monthly statements; mishandling payments; or failing to disclose fees, costs and charges allowable under a mortgage contract. DaSalla stopped making payments on the promissory note in 2010, and defendant purchased the deed of trust in 2020. Consistent with the factual allegations of the first amended complaint, and the record, defendant's acts consist only of purchasing the deed of trust from Mattos in 2020 and initiating foreclosure proceedings. In short, the complaint and record demonstrate defendant here did not, in fact, commit a number of acts alleged in the unfair competition law cause of action as they related to servicing the loan.

The only allegations at least arguably not pertaining to loan servicing are that defendant assessed improper or excessive late fees; improperly characterized accounts as being in default or delinquent; instituted improper or premature foreclosure proceedings to generate unwarranted fees; collected improper fees; and executed and recorded false and misleading documents. Given that, factually, defendant is alleged to have purchased the deed of trust and immediately commenced foreclosure proceedings, these allegations necessarily must relate to those proceedings, the only relevant action defendant took.

Defendant cites *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, disapproved on another ground in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, footnote 13, for the proposition that a plaintiff on an unfair

19

competition claim must demonstrate a causal link between their economic injury, an impending foreclosure, and the alleged unlawful acts.

We agree with defendant that *Jenkins* applies here. Plaintiffs have acknowledged that DaSalla stopped paying on the loan in 2010, years before defendant purchased the deed of trust in 2020 and initiated foreclosure proceedings. Because plaintiffs' property was subject to foreclosure based on their default, which occurred many years before defendant's involvement and alleged wrongful acts, plaintiffs cannot state a cause of action asserting that the foreclosure of their property—their alleged economic injury— was caused by defendant's wrongful actions. (*Jenkins v. JP Morgan Chase Bank, N.A., supra*, 216 Cal.App.4th at p. 523.) Thus, plaintiffs first amended complaint cannot show any of the defendant's alleged violations of the unfair competition law have a causal link to their economic injury. (*Ibid.*)

Plaintiffs argue that their first amended complaint "alleged acts and practices . . . that fall within each prong of the [Unfair Competition Law; Bus. & Prof. Code, § 17200 et seq.]. [Citation.] Each of these claims is independently supported. . . . [Defendant's] demurrer was based upon false assertions, falsities of which caused damage. Based upon [plaintiffs'] First Amended Complaint, the demurrer should have been overruled." But plaintiffs do not specify how their claims are supported, nor do they identify what they characterize as the falsehoods in defendant's demurrer. The trial court properly sustained defendant's demurrer to the unfair competition law cause of action.

## VII

### *Leave to Amend*

Plaintiffs argue that the trial court abused its discretion in refusing to allow them to amend their complaint. In fact, the trial court sustained the demurrer with leave to amend, but plaintiffs did not timely file a second amended complaint. Plaintiffs argue that all facts contained in their first amended complaint "should have been accepted as true, and those facts were sufficient to overrule the demurrer brought." In the

20

background section of their reply brief, plaintiffs assert that they "did not 'fail' to timely amend their complaint," but rather that "trial counsel did not amend their complaint because an amendment to the First Amended Complaint would not have been productive. [Citation.]  The facts would not change.  The rulings in the court's minute order were legally flawed."  These arguments amount to no more than a reprise of the claim that the demurrer was improperly sustained.

Plaintiffs argue that "additional facts could have been provided to further bolster the claims brought, especially considering the false assertions included in the demurrer." What they do not do, however, is identify what those additional facts are.  While plaintiffs argue that their complaint could be amended to cure its defects, they offer no indication as to how they would do so.  (Cf. *Thomas v. Regents of University of California* (2023) 97 Cal.App.5th 587, 636 [in the context where demurrer is sustained *without leave to amend*, because the plaintiff offered no suggestion how she would amend her complaint, she failed to meet her burden to prove amendment would cure the defect].)  Even if we were inclined not to treat the failure to amend the complaint following a successful demurrer as a waiver of unpled allegations (see *Shaw v. Los Angeles Unified School District, supra*, 95 Cal.App.5th at pp. 753-754), because they do not propose any amendments to cure their pleading's defects, plaintiffs have not demonstrated reversible error (see *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766 [it is the appellant's burden to demonstrate reversible error]).

Finally, plaintiffs argue, for the first time in their reply brief, that the trial court abused its discretion in granting defendant's motion pursuant to Code of Civil Procedure section 581, subdivision (f)(2) to dismiss the action.  They appear to argue that, by operation of Code of Civil Procedure section 597, section 581, subdivision (f)(2) did not apply, and they did not fail to file a second amended complaint because no further action was authorized pending appeal of the trial court's statute of limitations determination. Plaintiffs did not advance this argument in the trial court or in their opening brief on

21

appeal. Once again, we do not consider these arguments improperly raised for the first time in a reply brief absent a showing of good cause. (*Neighbours v. Buzz Oates Enterprises, supra*, 217 Cal.App.3d at p. 335, fn. 8.)

DISPOSITION

The judgment is affirmed. Defendant shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


_____/s/_____,
Krause, J.


We concur:


_____/s/_____,
Earl, P. J.


_____/s/_____,
Renner, J.